Mr. Levin, you may proceed. Thank you. May it please the Court, there is one issue in this case, and that is whether the statements elicited at the police station should be suppressed. There are two grounds raised for the suppression of those statements. The first ground is that the fruit of the poisonous tree applies. The second ground is that the statements elicited at the police station should be suppressed. The third ground is that the statements elicited at the police station should be suppressed. Why isn't this issue not just forfeited but waived? Because 114.11 requires pleading facts. You didn't plead compulsion or coercion, you know, to the trial counsel. So why isn't this issue waived? Well, trial counsel is different than appellate counsel, but trial counsel did raise it. He raised it in the motion to suppress. He raised two issues. One is there was a Miranda violation, and then in other paragraphs he made an argument that the statements were elicited involuntarily and that there was a violation of the Fifth Amendment. Those are conclusions. Those are not fact pleadings. Those are conclusions, not pleading facts. 114.11 requires that you put the State on notice as to the precise allegations that are being made. Now, maybe there's an argument of ineffective assistance of counsel, but when I read this motion, I did not see any allegation that there were threats, that your client was coerced. The facts that you outline in your briefs, do you understand the point? Why isn't that issue waived? Well, defense counsel did raise facts. He said that there were threats made and there was mental coercion done. He didn't just simply say there was a Fifth Amendment violation. And I don't believe that counsel for the State actually argued in the lower court that the pleading was lacking in factual sufficiency. You're basically saying that the State forfeited the argument that they're raising now, which if they were going to perfect their argument, they should have claimed that it was a defective pleading and forced the pleading to be properly filed with sufficient facts. Yes, and there's an Illinois Supreme Court case on it called People v. Adams, 1989, where the State is bound by forfeiture to the same extent as the defense. The State argues, however, that the trial court ruled on simply the Miranda violation because that's what was pled in the motion to suppress, correct? I strongly and respectfully disagree with the State. Let me ask you, can you please point in the motion to suppress where the allegation is? Yes, Your Honor. If I may just have a second because I actually outlined that with the page numbers, so I'm going to provide that to the court. If I could find it. Oh, excuse me, just at the end. And I'll provide a quote with page numbers. I have both motions in front of me. Okay. C-78, page C-78, that's the motion to suppress the second confession. Defense counsel raised that issue because defense counsel specifically argued for suppression of the police station confession. Then at page C-31, which is the first motion to suppress, paragraphs 5 through 7, defense counsel argued that the police had elicited involuntary statements in violation of the Fifth Amendment by implying mental coercion, threats, and promises during custodial interrogation without giving Miranda warnings. So the issue was sufficiently raised there, and the State could have said, well, we need more facts. I don't think it does need more facts. I think it puts the issue into play. Then at C-78 and C-79, the second motion to suppress, Mr. Penalty's counsel asked the trial court to suppress the statements at the police station. Then an oral argument on the motion to suppress, that would be R-234 to 247, defense counsel raised thoroughly in a detailed way why the fruit of the poisonous tree doctrine did not apply and discussed the cases of Brown v. Illinois and the second district's decision in People v. Dennis. And then at C-83, when the court denied the motion to suppress the statements at the police station, the court at length, and that's at C-83, court discussed and analyzed the fruit of the poisonous tree doctrine and explained why in its judgment it did not apply. Then the issue was raised again in the motion for a new trial at C-130. The defendant raised the error about the admission of the statements at the police station and preserved the issue. So I strongly believe that the issue is thorough, and I did discuss this at length in my reply brief. So it was raised in the first motion to suppress, the second motion to suppress, oral arguments during the motion to suppress, the motion for a new trial. In the first motion to suppress, the defendant accepted the trial court's suppression, did not make the argument that you should also find that the statements were involuntary, correct? No, he didn't make that argument. And I'll cite the page for that again. That was page C-31, paragraphs 5 through 7, specifically raised the argument that there was a Fifth Amendment violation, not just relying on the random, but the Fifth Amendment violation because the statements were involuntary. So he did raise it, and basically, so I rely on Peoples v. Heider, I think it is the only Supreme Court case where it specifically says that there's no forfeiture with the trial court an opportunity to address the same basic claim that was raised on appeal. So I cite Peoples v. Heider for the proposition that the issue is not forfeited. I do believe, and I respectfully believe quite strongly that trial counsel, different from me, actually raised the issue sufficiently. It was argued at length in the purposes of the forfeiture rules to make sure that trial courts had an opportunity to address issues, that the appellate court has an opportunity to examine a full and complete record on the issue. When you look at the purposes of the forfeiture rule, I believe those interests have been satisfied here. With respect to the trial court's initial ruling, the trial court granted the motion based upon the random violation. He did not find the statements were involuntary, correct? He did not rule on the issue. With respect to Peoples v. Dennis, your argument on Dennis, in Dennis the defendant was removed from his vehicle, ordered to kneel down when he was bleeding profusely from his leg, correct? And transported to the hospital. Right, transported to the hospital. Before his wound, which was still open, was bleeding, it was during that period of time when a police officer continued to interrogate him, correct? Yeah, I understand that the facts are strong. Strongly different, much different. In this case, Anderson interviews your client for about 2 minutes and 20 seconds or something like that, right? And the detective or the other officer speaks to him, Anderson speaks to him for 9 seconds? Well, I mean, isn't it, that's far different from the facts of Dennis, isn't it? Yes, I understand the State tries to limit Dennis to its facts, but there are other cases too, and I want to address Dennis too, but we have Lalbert, we have T.S., we have Jordan, which basically apply the framework of Dennis, and that's why I cited Dennis. Because the four cases that I discussed provide an analytical framework for the fruit-of-the-poisonous-tree doctrine to be applied to Fifth Amendment violations. The fruit-of-the-poisonous-tree does not apply to Miranda violations, but applies to Fifth Amendment violations. So I respectfully disagree with the State that an analysis of the facts of Dennis are sufficient to dispose of the issue. We have other cases besides Dennis. But in terms of Dennis, just because the facts are different doesn't mean that there wasn't a coercive setting here. We have to look at the facts of this particular case, and that's what I want to analyze. Right. And there's a number of different facts to consider, correct? Correct. I outlined the many factors which point towards a coercive setting, which means that the statements were elicited involuntarily. One is that the trial court made the finding that there was a custodial interrogation, which the courts have said is inherently coercive. So that's an important factor. Just because a person is in custody does not, if so facto, make a statement coerced or compelled, correct? I agree with that. But that's one important factor. Of course it is. But it's, you know, if we were to accept your argument, virtually every on-scene arrest of a person in a motor vehicle who's then placed in a squad car, that statement's not involuntary just because Miranda's not given, is it? There are a lot of other facts. I think the facts that Miranda wasn't given makes it more coercive. And then the threat to, well, the statement, there weren't really, there were statements by the law officers that unless the defendant is truthful, they're going to begin tearing his car apart, correct? Yes, and that's a threat, and that makes it more coercive. That's a very important factor. When is a Miranda warning supposed to be given? A Miranda warning is supposed to be given when the person is in custody and not free to leave. Does it relate to whether or not they're a suspect or not? A person could be a suspect but not be in custody. That's certainly possible. But in this particular case, the officers admitted he was in custody. They conceded that fact. He was not allowed to leave. But they claimed he wasn't under arrest, correct? Correct. And even the trial court made a finding that the defendant was in custody, a factual finding. Wasn't this a vehicle stop of a van based upon a tip that somebody was transporting marijuana in the vehicle? Yes. Wasn't the vehicle stopped without any ploy of a traffic violation? It was just stopped. It was seized based upon the tip. Wasn't that correct? Yes. And so basically the police stopped the van based upon a tip and didn't arrest because they didn't think they had probable cause yet, even though they placed the driver in custody in the squad car and started asking questions that were merely information. They had nothing to do with impriminating this non-suspect who supposedly was pulled over because of a tip that there was supposedly marijuana in the car. And then he was told nonthreateningly that if he didn't tell the truth, they were going to tear it apart. And I think there was even a dog sniff, wasn't there? Yes. Your Honor, the character of the stop changed. There was a Fourth Amendment issue. I didn't raise that on appeal. My issue is totally confined to the Fifth Amendment. But the police stopped the car and then asked the defendant, admitted, is there anything in the car, any drugs in the car? And the defendant said, yes, there's a blunt in the car. That gives the police probable cause to arrest. What was the probable cause to stop? I'm sorry? What was the probable cause to stop the vehicle? There was, as Your Honor pointed out, there was a tip. A credible tip by a reliable informant. Yes. So I'm not raising the Fourth Amendment issue. But what I'm saying is, and the police had authority to stop the car. I'm not arguing against that. But once the car was stopped, the character of the encounter changed. And the reason why there was an arrest and the police officer's statement that there was an arrest is pretty frivolous. The reason why is a multi-factor approach as well. One, he was handcuffed in People v. Arnold, 2nd District, 2009. Being handcuffed is a strong indication of arrest. But that's not the only fact we have here. Another important fact is that the police did have probable cause to arrest because of the defendant's admission of a blunt in the car, the bag of cannabis that was seized in the car. And then those facts point to an arrest. And then the third fact that points to arrest is the officer asked questions that were designed to elicit an incriminating response. Is there any more cannabis in the car? So if he answers no, that's an admission that the cannabis belongs to him because how would he know there's no cannabis in the car unless he controlled and possessed the cannabis? There's no question that he was questioned without being warned and he should have been given his marijuana rights, correct? I don't think the state disputes that, do they? No, there's no dispute. So let's just talk about a couple of things. You say in your brief that Anderson threatened the defendant that he'd be charged with criminal conduct to the fullest extent. Was that actually used? The state says that that threat was not made. Well, I believe, based on the transcript, I do very careful and meticulous work, but I make mistakes like anybody else. But I believe he said, if you don't tell me truthful answers, meaning admit that the cannabis is his, then we're going to charge you to the fullest extent of the law. So they make threats regarding the seriousness of the charges. And if you told him the truth, then the police officer would do everything in his power to help him. This is another factor in showing a very intimidating coercive environment. So I believe I'm out of time. No, that's okay. I took some of your time with my initial questions, so a few more questions. Thank you so much. With regard to, and I understand your argument with regard to forfeiture and waiver. The state has forfeited that argument themselves by not raising it in the trial court. That's basically your argument, correct? Two-pronged argument. I'm saying forfeiture. And I do really strongly believe that the defense counsel did preserve it adequately under hire. Okay. Now, with regard to attenuation, Bradbury knew what the defendant's activity was because the tip included detailed statements about where they were coming from. There was supposed to be two pounds of marijuana as opposed to 100-and-some-odd grams. So that's why the police believed there must be more. There must be more hidden in the car, correct? That would explain the pressing questions about you better tell us the truth, otherwise you're going to start tearing your car apart. You say that there's no attenuation because they overlapped the questioning in the squad with the questioning at the station. The state argues, wait a minute, Bradbury already knew. He didn't need any of the responses from the squad car to do that interrogation because they did know. Well, Anderson, Bradbury did the interrogation at the station, and Anderson told them before he transported the defendant, Anderson told me, the defendant already confessed. He admits possession of the cannabis. My point is that the information that they were supplying was the defendant by name. They knew he was coming from Milwaukee with two pounds of cannabis. So, I mean, the state, you both make arguments, but the bottom line is for the state's argument that there is attenuation because they didn't use the overlap of that conversation in the squad with the jailhouse interrogation because they already knew it. Well, if the police use legally obtained information to try to get a confession, then you might argue there's attenuation. If the police use illegally obtained information to try to get a confession, then there's no attenuation. So which is it? Well, I would argue that the police use illegally obtained information. The police didn't just simply say, did not tell him anything about it. No, he said, we know. He said, you know that I know. Right. And that means that. He told Anderson already. Right. He only confessed. So using illegally obtained information. He didn't tell him, look, I talked to Anderson. I know you already confessed. He didn't say that. He didn't quote the earlier. My point is he didn't use the earlier conversation. He just said, you know, and I know. Well, when I reviewed the audio tape, the defendant was silent. He was very hesitant to speak. And then all of a sudden Bradbury says, you know that I already know this. Which leads to the. And then the defendant talks. But the common sense inference of the suspect in custody is that the cops are going to share information with each other. So what's the surprise? The problem with it is that the police offering officer used a confession illegally obtained to extract another confession at the police station. And that is borne out by the statement. You already know that I know this. And the fact that before he made that statement, the defendant was silent. And then he made that statement, the defendant. And so the police were using illegally obtained information to gain a confession. So that's a strong factor showing no attenuation. And that's under the first issue. There's also the Siebert issue, which I haven't had time to address. Go ahead. Okay. So basically the only Supreme Court in Lopez adopted the concurring opinion of Justice Kennedy and Siebert. And so the defendant has to show that the police officers intentionally tried to question first, warn later, to gain a statement. But is there any case with this short a duration of questioning where, you know, there's two officers. One period of questioning is literally nine seconds. And the other period is just two minutes and 40 seconds. Do you have a case even close to that? But the cases don't say that that factor is the most determinative or that. No, but it is a factor, the length of interrogation, correct? But there are other factors that are very probative that show that there was a coercive setting. For example, Anderson, he didn't need to. He threatened him, a defendant, and then he got the admission. And he told Bradbury about the admission. So he got what he wanted out of the defendant. Mr. Levin, I'm looking at these factors that would show that the statement could be involuntary. There's 10 or 12. I'm looking at two that would seem to apply here. One would be the absence of random warnings. The other would be let's say that was a threat. Okay. Well, granted that that was a threat, we're going to, you know, tear your car apart. That's two out of 12. Are there any others? Yes. I'll list the factors. One is the trial court made a finding that he's in custody. That's an independent factor. And then case law is suggesting or holding that being in custody is an inherently coercive situation. Then three, no more random warnings is also a factor. Got that, right. Then four, threats were going to be. Four is the defendant was initially silent and didn't want to talk about it. So there is a question whether it's a factor. Well, when you say one is custodial and that that is inherently coercive, are you counting that as two factors? I'm counting it as one. It's the same factor. I mean, it's he's in custody. It's inherently coercive. I guess what I'm arguing is case law support why the first factor is pretty strong. So I guess it's one factor. Okay. So one, we have custody. It's inherently coercive. Second is the threat to tear the car apart. Third is the fact there was no Miranda. Fourth is the threat to bring the most serious possible charges against the defendant if he doesn't talk. Fifth is that the police officer said, we're going to do everything we can to help you if you admit that the cannabis is yours, basically. Which he used by the phrase, tell me the truth. And I'll go easy on you. So that's coercive, too. So that's about five or six factors. Now, one of the factors is, as you've just said, the existence of threats or promises. So when the threat to tear the car apart and the threat to charge him with the most serious offense, is that one factor or is that two? Two factors. Two factors. I believe it's two factors. Okay. Because the case law says threats or promises. That is a factor, right? So if there's multiple threats, do you count it as more than one? That's what you're saying. Well, I know the facts. Let's say the police officer said, well, if you don't confess to me, I'm going to put your wife in jail or something like that. That would be another threat. I wouldn't lump that in as one factor along with the other threat. I think both threats are pretty serious. Okay. So we're up to both independent factors. We're up to possibly four to five-ish, right? And then the threat about, well, sometimes positive reinforcement is a threat, too. So when he says, I'm going to go easy on you if you confess. Well, that would be the promise. Threats or promises. Correct. Yes. So lots of threats or promises. So I think we have to look at the death factor as particularly strong because there's only one small threat or promise. It would be different than the three or four threats or promises that the police officer in this case made. They packed in a lot of promises and threats in a couple of minutes. He did. He sure did. I agree. Also, I would like to argue more, but if Your Honor says I'm out of time, I'm. . . You know, we're going to have time for rebuttal. Okay. The State argues that even without the confessions, the defendant would have been found guilty of possession with intent to deliver anyway because of the amount. Do you agree with that? No, I don't. I obviously disagree with that. I'd like to address that, if I may. Briefly. Okay. So one of the elements of intent to distribute. And so we have lots of evidence the State relied on and used to contribute to the guilty verdict. We have the CD. We have the closing arguments. And we have the testimony of Bradbury where the defendant admitted that he distributed 106 grams of cannabis. So the question is, is that harmless beyond a reasonable doubt? No, it's not because the State used that confession to contribute to the defendant's guilt. Now, the jury could just easily reject the inference based on the amount that that means he's guilty of drug dealing. They might say he's guilty of possession but not drug dealing. Let me pose this to you. Yes. Would you agree that the State proved, and especially in light of your client's admission that there's cannabis in the car, they adjust the smoke, they blunt, and he's in control of the car, his girlfriend's car? Yeah. Those are the facts, right? Yeah. He's coming from Milwaukee. That the evidence was clearly sufficient to prove the defendant's guilt beyond a reasonable doubt of possession? Of possession. Then why wouldn't we, if we were to agree with your argument regarding suppression of the interrogation at the police station, why wouldn't we just reverse the possession with intent and affirm the conviction for possession, the lesser included? Why isn't that an available option where the evidence is clearly sufficient to prove his guilt beyond a reasonable doubt of possession? I mean, that's an alternative that more and more you see, and attorneys, the appellate attorneys, aren't making the argument. You see it in the trial court, but they're not making that argument here. Why not? Well, the State didn't make that argument. I'm saying I agree. You don't want that. You want to reverse on a remand for a new trial for your client to run the risk of being convicted again of possession with intent to deliver? Well, I'd argue that he served all this time, too, so I'm not sure that the State can reinitiate the whole thing again. They can preserve the conviction even though he completed his sentence. Well, for the sake of argument, I don't think the State can retry it because he served his sentence, so I'd stand on that. He can't retry it for what? For the unlawful delivery or for the possession? I don't think, if you quote Mr. Bruce, I don't think, you know, the court would have to have an option of either remand for a trial or not, but I'm not sure, you know, it's possible the defense counsel would make some kind of argument on that. But, yes, I guess there's a possibility of reversing on possession with intent to deliver and keeping the possession. That's a possibility. My position is both should be reversed, but the court has an option to reverse the possession with intent to deliver, preserve the possession. Have you conferred with your client as to whether or not the alternative form of relief would be acceptable and, therefore, ask for that kind of relief? Have I asked? No, I said did you confer? I have communicated by mail. I've sent briefs. I haven't specifically discussed that issue on the phone. But in your peripheral relief, you ask us to remand for a new trial. Yes, I'm just pointing out that the, you know, that would be an issue to be addressed at the trial court level about that, but I do ask for reversal of the convictions with the idea in mind that the court has the option of reversing on the possession with intent to deliver, keeping the possession, but I officially am asking for reversal. I understand. Reversal and remand for the trial, that's your request? Yes. Thank you. You'll have time for a quote. Thank you so much, Your Honors. Mr. Trejo. May it please the Court, Counsel, Adam Trejo on behalf of the people of the State of Illinois, I'd like to begin with clarifying a few facts. The defendant states in his brief that the officer, specifically Anderson, threatened him and stated that if you don't tell us where the cannabis is, we will charge you to the fullest extent of the law. I made a specific point to transcribe the audio to the conversations between the two officers. At no point during that transcription and hearing that audio did I hear Anderson tell the defendant that I will charge you under the fullest extent of the law. Second, the State's – Which tape are you referring to, the tape statement at the police station? The video, the video of the – In the squad car. In the squad car. That's in the squad car. That is the statement. And also I – All right, thank you. I talked to it in my brief as well. Yes. Do you know what a negative person is? Could you collect the definition? Pardon? No. In a simple small claims case, somebody claims that they're entitled to $50. And the defendant answers and says, I don't owe you $50. So then the plaintiff moves for a judgment for $49.99. Because the negative, the denial, was pregnant. It should have been, I don't owe you $50, I don't owe you anything. And so, in my mind, it could be said that you gave us a negative pregnant when you said what you said, which was there was nothing there about to the fullest extent of the law. That statement. And my question to you is, what did you hear or what did you transcribe specifically? Yes. It's in my brief, and I transcribed it. He says we could – he does state that we could rip apart the whole car. And I put that in quotations. But he did provide an explanation indicating, listen, and he kind of alludes to the fact that he already knows. But, of course, he received that information from the reliable Crime Stopper tip. He received information that he's traveling on 75 from Milwaukee to Freeport with possibly two pounds of cannabis. So he does state that I can rip apart the whole car. But we must look at it in its full context. When you hear it, he's not yelling, he's not screaming. And when you look at the defendant's demeanor, he doesn't look scared. He doesn't look visibly upset. And turning on to the merits of the voluntary argument, forfeiture aside, the factors do not weigh in favor of the determination if the state was involuntary. Other factors that the defendant can state are his age. He's 41 years old. His education. He has a GED. And his experience. This isn't a 17-year-old. This isn't his first rodeo, so to speak, with the officers. His criminal history extends back to 1992. He's had a conviction for delivery of cannabis in possession of a firearm. So I wouldn't say he's comfortable, but he understands officer protocol. We also look at the physical condition at the time of questioning. Here, again, he's composed. He's not fidgeting. He's not crying, in contrast to Dennis, where Dennis is bleeding, and he has a wound, and the officer hasn't even asked for permission to come speak with him. We have an officer. We have a defendant in custody, in handcuffs, yes. The windows roll down. He can see what is going on. And he's had varied experience with officers. Further, there is no mental abuse, apart from the rip apart from the whole car. But, again, he provided a justification for that. And that justification is, I don't want to waste my time. I don't want to waste your time. That justification wasn't, I'm going to charge you to the police. They pulled over on the side of a highway, correct? I believe so, yes. And they, according to the officers, they were following protocol. And at no point did they argue that the protocol was illegal. Anderson testified that when a dog alerts on the police vehicle that they arrest, they handcuff the detainees, the individuals in the vehicle, and place them in the squad car, and then they search. That's their protocol. That's not inherently coercive. So when you look at the factors indicated by the letter… Does that mean that the protocols, as a matter of course, call for the arrest and possible release thereafter, like they did with the other passengers? Or is it deemed to be a seizure? What do the protocols define it as? Well, on appeal of the record, they don't include the protocol. Does the protocol say that on request they can be released, handcuffs removed? I would speculate. I can't speculate what is in that protocol. I do know that he was formally arrested after they searched, after they found the bag, and after they ran his driver's license and they found out he was invalid. That's when they arrested him. Was there a probable cause to arrest him when he admitted to the fact that I believe they found the blunt in the car? Well, the trial court found that they had reasonable suspicion to pull the car over. And in their brief, the defendant concedes that they did have probable cause to arrest him, and I do put a side to that in my brief. That's a concession. There is no testimony by the officers where to indicate this is when I formed probable cause to arrest him. They just indicate that I arrested him after all these sequence of events. After I interrogated him, got incriminating evidence, then I arrested him, right? Also, after they searched, they found the loose leaf cannabis, which corroborated his initial statement that said, I just smoked a blunt. It's laying on the floor. And in addition, they stated that as soon as his driver's license was determined to be invalid, after all those facts taken together, that's when they arrested him. And there's a strong inference that's when. And they arrested him for the driver's license violation? In condition with the possession of the cannabis. Oh, okay. Yes. And the State would like to point out that the State was penalized. They didn't provide the Miranda warning. That statement was used. Now, assuming arguable that this Court finds that the statement was involuntary, we would maintain that the statements were sufficiently attenuated. Was the argument made, again, that the first motion suppressed that the statements were involuntary because they were coerced due to threats and promises? No. I went back and I reviewed the hearing. And the defendant didn't use the word voluntary. And during that, during his argument, he says, they're violating what Miranda is there to protect. That's the crux of their argument. I couldn't find the word voluntary. The only place where you find voluntary is on page C31. And it's a very conclusory statement stating that in the event these statements were coercive or they were made as a result of coercion or threats or harms. But that's the only place I would find that word. I wouldn't necessarily go as far to say that that argument was presented at the hearing because I didn't find it. Was it presented at the second motion to suppress? No. The crux of it was, the way I read it, the second motion to suppress, it was kind of like blanket statements, not very specific. That you held that the statement was inadmissible for various reasons. Therefore, the fruit of the poisonous tree doctrine applies. There was no really specificity where you can find that, oh, it was involuntary. Therefore, this doctrine applies. I couldn't really find that. It was more like a blanket broad argument. They did argue Dennis, correct? They did argue Dennis. Doesn't that preserve the argument? Well, to preserve an issue, you really have to be specific and plead the facts that would support that argument. That's why I briefly mentioned it for this court to consider. But even if it were forfeiture, as I've noted, this court has the authority to ‑‑ forfeiture is a limitation on us, not on this court. I did want to bring it up because it lacks specificity, especially when you ‑‑ Shouldn't that argument be made in the trial court to counsel's point that the State Court has said arguments are not making it? At the time, the defense tries to make the argument in the trial court. And you should say that the prosecutor should say, judge, we had no idea they were going to argue this. We should sign their motion. Right. That's where you should make the argument, not here. Right. Well, there was nothing to respond. Typically, when opposing counsel makes an argument, that's what you specifically respond to. You don't respond to arguments that weren't made. At the hearing, if opposing counsel is arguing these statements that were stricken, it's because Miranda is there to protect them. And, of course, the State is going to reply directly to what you're arguing. If they're not arguing any involuntariness at the hearing, why would they respond to that? But they did ‑‑ the State did file some pleadings, and they did address Dennis and go into that analysis and maintain that it was voluntary. I would just also like to point out at the ‑‑ at his motion for a new trial, the word voluntary is in that motion. He didn't argue that the first statement should have been struck because it was involuntary. And I quoted it. At the hearing, he says, my opinion is that it should have been denied. And if it had, it would have changed the outcome and ruling.  So even if you do find that it was kind of allegedly incorporated in his motion, it really wouldn't have served as an approach to our motion either. A question about the attenuation. Yes. Because you said a few minutes ago that if the statements were involuntary, then there was an attenuation. Were there any intervening circumstances here that would attenuate that? Yes. Well, one ‑‑ If so, tell me. Sorry. Well, one, of course, is the presence of Marada warnings. That is ‑‑ and that's what happened here at the police station. And I would like to point out that the officer who questioned at the police station, he questioned him for nine seconds on scene and asked him one question, is there any more? He repeated that question twice, but that's the only question he asked. This is Bradbury. Bradbury, yes. Bradbury is the one who questioned for nine seconds. And that's the only interaction he had with the defendant on scene asking him that question. So an hour elapses between the time the stop occurs and when he's transported to the police department. So an hour has elapsed, and we have this officer who's providing Marada warnings. So that time in conjunction with the Marada warnings are factors that are to be considered in favor of a finding of attenuation. I also indicate that case law states that other ‑‑ that this court should look at subjective and objective evidence. And part of the subjective evidence is what did the officers believe. I don't believe that the officers purposefully tried to violate this defendant's Marada warnings. They just ‑‑ they misunderstood the law. Does that mean that they purposely and maliciously and vaguely tried to infringe on his right to receive these warnings? No. Our Supreme Court observed that police officers rarely admit that they're going to override the defendant's rights, correct? They're always going to come in and say I was mistaken, I made a mistake. This is correct. But when you look at their testimony, I don't think they weren't credible. Everything they said occurred. It happened. They testified to the best of their recollection. There's really nothing in the record to indicate that they're lying. They directly said I was mistaken. Well, they didn't say I was mistaken. I apologize. They said I believed that he was detained and not arrested. They believed that you only receive the Marada rights once you're arrested. That was the mistake they made. And it's the same position that they weren't credible in testifying to that. So those are the factors of attenuation. Moving on to the other issue that the officers used an improper question first, warn later tactic. Again, it was Bradbury who interviewed the defendant at the police department. If he wanted to gather information and then later use them at a second questioning, he would have asked more questions than that one question, is there any more. The length of interrogation would have been longer than nine seconds. Again, you look at the tape, his concern is searching the vehicle. They're trying to expedite the search and not waste time. That's correct. They don't want to waste resources. There's already five officers on the scene. There's three people. There's a baby. They want to quickly do their job and move on. They have other cases pending or other calls. So when this officer goes back at the police departments, as I already know, again, I'd like to reiterate the fact that he also received information from the crime stopper tip. The defendant unappealed, doesn't testify that this tip was unreliable, doesn't testify that that tip shouldn't, that the officer shouldn't have relied on that tip. So they didn't use the improper question first, warn later technique. The facts just don't warrant that inference. Barring any further questions, the people of the state of Illinois respectfully request that this court Thank you. I will try to talk quickly and address all the points. Okay. The purpose of the interrogation in the police car was to get a confession. It wasn't to get the, you know, find out about more cannabis in the car, because if the defendant answers no, there's no more cannabis, he admits to possession. If he says yes, he admits possession. Anyway he answers the question, it's a confession. So that's what the police officer was trying to do. He did it purposely and flagrantly. Well, they're also trying to find the rest of the cannabis, right? They're trying to, I mean, the state's argument makes some, has some sense, because, you know, they're on the side of the highway. There's a little baby in the car. There's two other people being detained, including the defendant. They're trying to expedite the search of the vehicle, and they actually make the statement, you know, tell us the truth, otherwise we're going to tear the whole car apart. The dog sniff, there was a dog there that indicated and found the cannabis, and the dog didn't indicate it anywhere else in the car. It seems like a phony reason to me that they gave that is there any more cannabis. They knew the answer to that question. They had thoroughly searched the car. The reason for the question was to get a confession, which they had successfully did. It wasn't to see if there was more cannabis. It was a phony reason. And is that a, that's a fact question, isn't it, what their motives were? And the trial court believed their testimony, correct? Well, it's at the noble standard of review whether it was. Not the fact question, not the credibility of the officers. That's the trial court's determination. But the trial court did not make any findings of fact on that particular point, so I would ask that there not be any deference on that point, because the trial court did not make a finding of fact on that point. With regard to the state's argument regarding the first motion to suppress the arguments, the term voluntary was never used. Is that correct? It's paragraph 5, 6, and 7. I firmly believe, because I read the motion, Your Honor has it, but I think that defense counsel used the word involuntary, and defense counsel used the word Fifth Amendment. So defense counsel preserved it. And under the low standard of hater, I think we more than adequately preserved that issue and it's fully addressed in the reply. What's the purpose of the requirement for pleading facts in a motion to suppress statements? To give notice of what the issues are that the defendant is going to argue. So the defendant did give notice. No, it's not just the grounds for the motion, which are violations of the Fifth, Sixth Amendment. It's the facts. The facts have to be pledged in a motion to suppress statements. I understand your point that the state, the place to make that argument is in the trial court. Because defense counsel, if the trial court found that there was a problem, could have repled, and the whole problem could have been taken care of. But again, I really, I respectfully believe that it was adequately preserved. And I didn't see any case cited by the state, and I'm aware of no case, where a defense counsel that does plead the issue as it can't be considered under the appeal because it doesn't contain enough facts. I'm just not aware of any case like that. I don't think the state has cited it. So I do think it was preserved. I think HADER is a very liberal standard. That is, was the same basic issue raised in the trial court that the appellate court is addressing on appeal. And I think the defense, I think that standard is more than satisfied here. So I rely not just on the state's forfeiture, but I think the issues began to be preserved. So there are a couple other issues I'd like to get to, hopefully. I have a question. Maybe it's hypothetical, but I believe there were two factors that were claimed. One was that Miranda warnings were given. And since Miranda warnings were never given up until the time they were given, what has been attenuated? If, in fact, attenuation is supposed to be a measurement of time, it's supposed to be a measurement of time from whence to whence, and apparently to argue that giving Miranda warnings are an attenuation, how can the underlying foundation for the questioning be an attenuation when that's supposedly the starting point? Yes, I understand. And if you look at the four factors, giving Miranda warnings under Bromfrey, Illinois, and under Dennis, that alone does not result in attenuation. What we have here under the other factors is a very, very short interval between the police car interrogation and the police station interrogation, less than an hour, about a half hour, a much shorter interval than Dennis, by the way. And then under the purpose and flagrancy of this conduct, and then no intervening circumstances. The Miranda warnings don't count as intervening circumstances. I respectfully agree with the defense counsel. There are separate strands in the attenuation test. The first strand is the Miranda warnings. The second strand is whether there's intervening factors. There's no intervening factors here because what the police officer did is use illegally obtained information to extract a confession at the police station house. It was like one continuous interrogation because it was only a half hour interval that passed. You keep saying that. I understand. Okay. The information that was obtained by Anderson is essentially the same information that they already had from the confidential informant, correct? No, I disagree because what we have here is the defense. They had his name, the fact that he was coming from Milwaukee with two pounds of cannabis. This issue I raise is different. This issue is not just the evidence that they got from a tipster that there's cannabis in the car. That is not the issue I'm raising. The issue I'm raising is that the defendant made a confession in the police car and the police are using that confession, not the tipster information, but the confession to obtain another confession at the police station. What did the officer say that related to the statement in the squad car? He didn't say, I know because you told Anderson. He just says, I know. You know I already know this. And the defendant didn't know about the tipster. He knew about his confession. He knew that he was being pulled over for some unknown reason. There was no other reason. The only question is did he have anything illegal in the vehicle, correct? I mean, he's not told you're being pulled over for speeding, you're being pulled over for driving under a broke license, you're being for some other reason. He knows he's been pulled over because they suspect that there's an illegal substance in the car, which is the question that the officer asks. And there's five officers at the scene. He knows. And the officer tells him, I know and you know. But if he had framed it differently and said, this is what the state argument is brief, whether he knows about cannabis in the car, that's not the question. The question is Mr. Pendleton's knowledge of what the police officer knew. And the police officer knew that Mr. Pendleton admitted possessing the cannabis. So that was an attempt and a successful attempt at using what had transpired in the police car a short 30 minutes later to get an incriminating statement at the police station. I have other things, but I'm out of time. Thank you. Thank you so much, Your Honor. Thank you. Appreciate it. Thank you. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you. The court stands in recess.